Const. 1890) we have practically a complete blending of law and equity. . . . The necessary effect of section 147 of the Constitution is to produce this result, for it would be absurd for this court to reverse a judgment because equity had been administered by a court of law, and remand the case to the chancery court, with directions to do what the court of law had already done; and so, where chancery had entertained a purely legal demand and disposed of it correctly.' "

As to the second question, we think the bill states a cause of action with sufficient particularity. If the defendant is not therein fully informed, her remedy is by motion, and not by demurrer.

*Affirmed and remanded.*

---

## WOODS v. TOWN OF INDIANOLA.

[75 South. 549, Division A.]

MUNICIPALITIES. *Liability for torts of employees.*

In a suit by plaintiff against a municipality to recover punitive damages for cutting off her water supply it was error to grant a peremptory instruction to the defendant where the evidence showed, that the municipality was under obligation to furnish water to all its residents, and that it had employed a special tax collector to collect its water tax with power to disconnect the water from the premises of any person declining to pay the same, that such water tax collector proceeded to act under this employment and made demand upon plaintiff for the payment of a greater water tax than the amount due by her, she having tendered the correct amount to him which he refused to accept and cut off her water supply, in such case the municipality was liable for his acts, although the order upon the minutes of defendant appointing the special tax commissioner required the giving of a bond by him which the evidence did not show he had given.

APPEAL from the circuit court of Sunflower county.
Hon. F. E. EVERETT, Judge.

Suit by Mrs. M. A. Woods against the town of Indianola. From a judgment on peremptory instruction for defendant, plaintiff appeals.

This suit was filed in the circuit court by the appellant against the town of Indianola for entering her premises, disconnecting her water pipes, and cutting off her supply of water. No evidence was introduced in behalf of appellee, but at the close of that introduced in behalf of appellant the court peremptorily charged the jury to find for appellee and there was a verdict and judgment accordingly. According to the evidence for appellant, the municipality was under obligation to furnish water to all of its residents, and one Gooch was employed by it to collect the water tax with power to disconnect the water from the premises of any person declining to pay the same. The order upon appellee's minutes appointing Gooch as "special tax collector" required the giving by him of a bond in the sum of one thousand dollars. The evidence discloses that he was acting as water tax collector but does not disclose whether or not he gave this bond. Gooch made demand upon appellant for the payment of a water tax greater than the amount due by her; she tendered the correct amount to him which he refused to accept and cut off her water supply.

One of appellee's contentions is that Gooch must be held to have been acting without authority from it because of the failure of the record to diclose that he had given the required bond thereby qualifying as water tax collector.

*S. F. Davis,* for appellant.

The town of Indianola in operating its waterworks system, is not exercising any of its governmental powers, but is acting as a private public service corporation, and is under the same liabilities and is bound to

furnish water to all of the residents within its corporate limits who apply therefore, at a uniform rate.

In the case of *Yazoo City* v. *Birchet,* reported in 89 Miss. 700; this court says: "The liability of a municipality in the management of a public service manufacturing plant which it operates is determined by the same rules that apply to individuals and private corporations engaged in like business."

In 40 Cyc, page 791, the writer says: "A water company is bound to supply all persons along the line of its main, who apply for water, and offer to pay the price, without discrimination and at uniform rates, and the same duty rests upon a municipality which operates its own waterworks system."

The appellant in this case proved by her testimony, and that of her husband, R. P. Woods, what they had been paying the town of Indianola for water for years before the injury complained of occurred, and sought to make proof by the witnesses Watkins, Gilmer, House and Johnson that they had all been, and were then paying the same rate that plaintiff's testimony showed she had been paying. This testimony was clearly comptent and the court below erred in excluding it.

If there ever was a rule of law better settled than that the master is liable for the acts of the servant while acting within the scope of employment, I do not now recall it. I am certainly not going to reflect upon the intelligence of this court by citing any authority on that subject. If Mr. Gooch was not acting for the town of Indianola, and acting strictly within the scope of his duties, when he went over to the residence of Mrs. Woods, and demanded of her that she pay him an amount of money which he claimed to be due said town for water rent, and when she declined to pay the amount claimed by him to be due, went into her yard against her will and over her protest, and disconnected her water pipes, and cut the water off from her hydrant, who was he acting for? He certainly was not acting

for himself. He did not claim that she owed him any-thing. He was employed by the town of Indianola to collect water rent, and went to her house for the pur-pose of collecting water rent, and demanded that she pay him water rent, and when she declined to pay him the amount demanded by him, he committed the trespass complained of for the sole purpose of compelling her to pay water rent, and if that was not acting within the scope of his employment, then I am frank to admit to this court, that I do not know the meaning of either master or servant nor what is meant by expression, ''acting within the scope of his employment.''

It was argued to the court below, and counsel for the defendant may argue the same thing here, that the town was not liable because Mr. Gooch was only em-ployed to collect water rent, and had no authority from the mayor and board of aldermen of the town of In-dianola to cut anybody's water off. If that was the law, a person might buy a railroad ticket good for one first class fare between two given points on the line and pay the regular rate therefor, and get on the train provided by the company to carry him to his destination and be kicked off by the conductor of that train between those two points, unless he paid an additional sum of money which the conductor claimed to be due for his trans-portation and then if he sued the railroad company for the damages sustained thereby, they would have a per-fect defense by coming into court and showing that the offending conductor was only employed to manage the train and collect cash fares and take up tickets, and that the president and board of directors of the rail-road company had never given him any authority to kick anyone off of his train.

It is a very rare thing indeed where a servant ever has any expressed authority from his master to com-mit a trespass upon the person or property of another. It is nearly always the unauthorized acts of the servant that bring grief to the master. So long as the servant

conducts himself in a lawful manner, there is never any cause of complaint. In the case of *Richberger* v. *American Express Company,* reported in 73 Miss. 161, and 18 So. 922, this court says: "The master who puts a servant in a place of trust or responsibility, or commits to him the management of his business or care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused, goes beyond the strict line of his duty and authority and inflicts an unjustifiable injury upon another."

There is no doubt as to the defendant's liability in the case at bar. The only question is the amount of the damages appellant is entitled to receive for an unjustifiable injury received by her at the hands of the appellee, and this question should have been submitted to the jury for their decision, and because it was not done, this case should be reversed and remanded.

*H. C. Mounger,* for appellant.

The town was clearly liable for the acts of the agent Gooch. He was the authorized collector and had the authority to cut off the water for default. It was strictly within the scope of his authority. In the case of *Yazoo City* v. *Birchett,* 89 Miss. 700, 42 So. 569, the court says "when a city embarks in the management of any utility for profit, it is liable or not liable by precisely the same rules applicable to private corporations or individuals conducting such enterprises. In this case the city was operating an electric light plant. A waterworks plant would be the same.

In the case of *Pass Christian* v. *Fernandez,* 100 Miss. 76, 56 So. 329, 39 L. R. A. (New Series), 649, the court said: "The only real defense is that at the time of the injury the cart and driver were engaged in a governmental duty, and on account of this no liability attaches on the part of the city. It may be true as an ab-

stract proposition of law, that damage occasioned by the
city in the exercise of a purely governmental duty does
not render the city liable; but it must be a governmental
duty and the idea that a driver of a city cart, engaged
in hauling trash and dirt for the city, is engaged in a
governmental function in any sense in which the word is
used in the law, requires a stretch of the imagination
that is beyond our power to make. It is a matter of no
little difficulty to define what are and what are not
purely governmental duties of a city. To a very large
extent these questions can only be settled by the facts
of each particular case, so variant are the conditions
under which this question arises The public or govern-
mental duties of a city are those given by the state to the
city as a part of the state's sovereignty to be exercised
by the city for the benefit of the whole public, living
both in and out of the corporate limits. All else is pri-
vate or corporate duty, and for any negligence on the
part of the agent or employees of the municipality in
the discharge of any of the private duties of the city,
the city is liable for all damages just as an individual
would be. The use of the cart in hauling dirt or trash
for the city is for no governmental purpose, as con-
nected in any way with the sovereign duty of the state.
The state does owe the duty to all its citizens of pro-
tecting the person from assaults and the property from
destruction, and all done by the city in furtherance of
this duty of the state is done in a governmental capa-
city. But the hauling of dirt and trash is for the
use and advantage of the city in its corporate capacity,
is a corporate duty, and the city is liable for all damage
done by any officer or agent so employed.''

When such municipal corporation is acting within its
authority in a ministeral character, in the management
of its property, it is liable for the negligent acts of its
employees although the work in which they are engaged
will enure to the benefit of the municipality. Am. and
Eng. Ann. Cases 1914B. p. 324; *Keever* v. *The City of*

*Mankato; Flannegan* v. *The Same,* 113 Minn. 55, Ann. Cases 1912A, p. 216, the city was held liable for the pollution of the water supply. In the note to that case on page 220, it is said: "A municipal corporation has a dual character, the one public and the other private, and exercises correspondingly two-fold functions. In the exercise of its political goernmental powers no liability attaches to it at common law, but in the doing of those things which relate to special or private corporation purposes, it stands upon the same footing with respect to liability for negligence as a private corporation which owns and operates waterworks for the purpose of supplying its inhabitants with water, in the same manner as a priate corporation might maintain such works, is liable for any negligence in respect thereto. The recent cases from most jurisdictions support this view," citing numerous authorities. "The broad rule with respect to a municipal corporation is that such a corporation is not liable for acts done in the exercise of governmental or political powers, but that for wrongs perpetrated in the management of private enterprises it may be held responsible. And it is conceded generally that the maintainance of waterworks is a private enterprise within the rule. Citing *Winona* v. *Botzet,* 23 L. R. A. (N. S.) 204, where it was held by the court that in the exercise of "to build, maintain and operate waterworks, to furnish water to the city and to its inhabitants, for compensation the city is liable to the same extent as a private individual. See also the extensive opinion to the case on page 204. It is not necessary to further recite authorities on this subject.

The plaintiff was damaged by the cutting off of the water, and should have been allowed to go to the jury. *City of Jackson* v. *Anderson,* 51 So. 896; *Tel. Co.* v. *Hobert,* 89 Miss. 261; 19 Ann. Cases, 848, note. See particularly the extract from *Poole* v. *Paris Mountain Water Co.,* 81 S. C. 438; 128 Am. St. Rep. 923. See also

this note in full on pp. 848, 849. Such being the case on what rational theory were we not entitled to go to the jury?

The rule of law is thus stated: "Regard being paid to the evidence of the plaintiff alone, and giving it, taken all together, such weight as it was fairly entitled to, did it make out or tend to make out the case of the plaintiff. And could or should a court permit a verdict for the plaintiff on that evidence to stand. We are clearly of the opinion that both of these questions must be answered affirmatively, and we answering, must declare the action of the court in excluding all the evidence to the plaintiff to be erroneous. *State* v. *Spengler,* 75 Miss. 129, 138. This was a civil case.

In *Jones* v. *Knott et al.,* 70 So. 701, HOLDEN, J., says: "The plaintiff in the court below proved a good cause of action by the testimony he offered, and as there was a conflict in the evidence offered by the plaintiff and the defendants below, the cause should have gone to the jury, and the trial judge erred in granting a peremptory instruction for the appellees." But it is useless to cite cases on such a well settled proposition.

*J. H. Price,* for appellee.

If there is reversible error in this record, it is due to the action of the court in directing a verdict for the defendant and it is to this question we come with confidence that this court will sustain the action of the lower court in granting this instruction directing a verdict for the defendant on the evidence then before the court. The underscored words will be understsood by the court later on in this discussion; they have to do with parts of orders found in the transcript but not in evidence.

One of counsel for appellant in his brief seeks to draw the line of demarcation between municipal functions which are purely governmental and those which are

purely municipal. We do not contend that appellee oper-
ates its waterworks as a governmental function but as
one of its municipal functions for the advantage of the
urban community embraced within its corporate limits.

Brother Davis, in his brief for appellant, on the doc-
trine of *respondeat superior* holds that a municipality
or by analogy a county, is bound to respond for the un-
authorized acts of its officers though done *colore officii*
without ratification, and in such case holds the munici-
pality liable for such acts and places it in the same
category with a railroad company whose conductor
repudiates the passenger's ticket issued by its duly au-
thorized agent and kicks the passenger off the train be-
cause he refuses to pay a cash fair demanded by him.
He sees no difference between the president and board
of directors of a railroad company incorporated for
privat? gain only to be intrusted with the lives of the
citizens of the state that created it and the mayor and
board of alderman of a municipality created by the
state primarily for governmental purposes. We do not
think his analogy sound but we do think the distinction
fundamental. However, it is common knowledge that a
banking corporation is not bound by the unauthorized
unratified, act of its officers such as the execution of a
criminal bond or bond for appeal in a criminal case, or
the execution of a deed to its lands in its name without
the authority of its board of directors, though such
officer would be personally liable for this unauthorized
acts.

Was. T. G. Gooch an officer? If T. G. Gooch did the
wrong complained of for the town then: First, was he
at the time an officer of the town? and, second, were the
acts complained of authorized by the town? and, third,
were the acts complained of thereafter ratified by the
town?

Then, first, the burden of appellant's declaration and
proof is to establish as a fact that T. G. Gooch held the
office of water tax collector of the town and that while

he was engaged in and about his official business for the town he committed the wrongs complained of and then they conclude that his acts were the acts of the town and that the town is liable in damages therefor.   The burden was on the plaintiff to establish these charges.

In this connection it stops short of proving that Gooch held the office of water tax collector. True they introduced in evidence the order in Minute Book 4, page 168, Tr., p. 88, appointing Gooch water tax collector on the same basis as shown on page 68 of the Minute Book 4, and we must look to page 68 of Minute Book 4 which plaintiff introduced; also. see Tr. p. 88, to see what is meant by on the same bases and now we find by their own evidence that there was a condition precedent to Gooch becoming an authorized water tax collector of the town, viz; the order on page 68 in Minute Book 4, Tr. p. 88, requires the making of a bond payable to the town in the sum of one thousand dollars with the National Surety Co. of N. Y. as his surety, to be approved by the mayor as conditions precedent to act for the town, or to hold this office but they do not prove that such bond was filed or approved or exist and this is their evidence, not ours. They therefore, prove the negative of that which they affirm, but, second, were the acts complained of authorized by the town and this inquiry carries us back to the underscored words on page 2 of this brief which we promised to explain. If the court will now examine the transcript with me it will be found that no evidence was offered to show that T. G. Gooch was ever, at any time, authorized to cut off water.

Smith, C. J., delivered the opinion of the court.

The peremptory instruction requested by appellee should not have been granted.

*Reversed and remanded.*